**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


NICOLE L. GESSLER,                    )
                                      )
                Plaintiff,            )    Civil Action No. 07-982
                                      )
        v.                            )    Magistrate Judge Caiazza
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social                )
Security,                             )
                                      )
                Defendant.            )


## OPINION AND ORDER

## I.  OPINION

For the reasons that follow, the Plaintiff's Motion for Summary Judgment (Doc. 11) will be granted, the Defendant's Motion (Doc. 13) denied, and this case remanded under Sentence Four of 42 U.S.C. § 405(g) for further administrative proceedings.


## BACKGROUND

In May 2002, the Plaintiff Nicole L. Gessler ("Ms. Gessler" or "the Claimant") filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See generally* R. at 80-82, 263-265.  Ms. Gessler claims an onset date of August 28, 2001 and, to be eligible for DIB, she must demonstrate disability on or before June 30, 2003; her onset date is irrelevant for the purposes of SSI eligibility.  *See generally* 2d Admin. Hearing, R. at 306-307.

On October 4, 2003, Administrative Law Judge James J. Pileggi ("the ALJ") issued a decision denying benefits. *See* ALJ's 1st Decision, R. at 14-21. The decision was appealed to this court, and the government moved for a voluntary remand to conduct further administrative proceedings. *See* R. at 340-42. The remand was granted, *see id.* at 337, and the SSA's Appeals Council entered an order outlining the ALJ's additional duties:

> The [ALJ's first] decision states that the [C]laimant's most significant impairments are related to her mental health . . . . The evidence shows that [she] has a history of treatment for anxiety, depression and a bipolar disorder. A consultative psychological evaluation [by Julie Uran, Ph.D.] in September 2002 indicated that [Ms. Gessler] experienced difficulty in recall of recent events and that she had poor immediate memory . . . and assessed ratings of fair to poor in all work-related areas except maintaining personal appearance . . . .
>
> The [ALJ's] decision finds that the [C]laimant can perform work that does not involve more than simple, repetitive work that is low stress in nature and does not involve production quotas or significant responsibilities . . . . The Appeals Council concludes that further development is needed to determine the restrictions imposed by the [C]laimant's mental impairments on her ability to perform work-related activities.

R. at 347.

Consistent with these findings, the Appeals Council directed the ALJ to gather additional evidence regarding Ms. Gessler's mental impairments, including "if warranted," another

consultative examination and medical source statements regarding

her residual functional capacity to work ("RFC").  *See id.*

at 348.  The Council also instructed the ALJ to "[f]urther

evaluate the [C]laimant's mental impairments in accordance with

the special technique described in 20 CFR 404.1520(a) and

416.920(a), documenting [his] application . . . by providing

specific findings and appropriate rationale[s] . . . ."  *Id.*[1]

Thereafter, the ALJ issued a second decision denying

benefits.  *See* ALJ's 2d Decision, R. at 288-295.  The ALJ

determined that the Claimant suffered the "severe" impairments of

lumbar sprain/strain, depression, anxiety and bipolar disorder,

but that these conditions did not preclude her from performing a

limited range of light or sedentary work requiring only "simple,

repetitive [activity] that does not involve more than routine

. . . processes and settings, incidental interaction with the

public[ or] high stress; no high quotas or close attention to

quality production standards, team work or repeated bending at

---

[1]  The aforementioned regulations mandate the completion of a
psychiatric review technique "summarized on the [SSA's] Psychiatric
Review Technique Form (PRT [Form]," requiring adjudicators "to assess
an individual's limitations and restrictions from a mental
impairment[] in categories identified in the '[Part] B' and '[Part] C'
criteria of the adult mental disorders listings."  Ramirez v.
Barnhart, 372 F.3d 546, 551 (3d Cir. 2004) (citations omitted, some
quotations in original).  Most relevant here, Part "B" examines a
claimant's restrictions regarding "daily living activities[;]
difficulties in maintaining social functioning[;] concentration,
persistence, or pace[; and] repeated episodes of decompensation."
*See generally* Najmi-Nejad v. Barnhart, 602003 WL 22120999, *2 (3d Cir.
Aug. 20, 2003) (citing applicable regulations).

the waist to 90 degrees." *Id.* at 290, 294. A vocational expert testified that an individual with these limitations could perform jobs that existed in significant numbers in the national economy, and the ALJ found the Claimant not disabled at step five of the sequential analysis. *See id.* at 294-95.

## ANALYSIS

Save the first stage of the sequential evaluation, which established only that Ms. Gessler was not currently employed, none of the ALJ's remaining analyses enjoy the support of substantial evidence.

At step two, the ALJ failed to find "severe" the Plaintiff's well-documented headache and cervical spine/neck impairments. The "severity" inquiry "involves a <u>minimum threshold determination</u> of whether the claimant is suffering from a [noteworthy] impairment." *See* <u>Knepp v. Apfel</u>, 204 F.3d 78, 84 (3d Cir. 2000) (citations omitted, emphasis added). Under this "*de minimis*" standard, only "claims that are based upon the most trivial" allegations of impairment may be rejected. <u>Harper v. Sullivan</u>, 1991 WL 24908, *4 (E.D. Pa. Feb. 25, 1991) (citation omitted). Indeed, the severity inquiry is "employed as an administrative convenience to screen out claims that are <u>totally groundless</u> . . . from a medical standpoint." *Id.* (citations and internal quotations omitted, emphasis added).

The record contains ample medical evidence establishing Ms. Gessler's ongoing headache and neck problems. Even a non-examining physician employed by the SSA found the Claimant to have a "[l]imited" exertional RFC "secondary to <u>neck</u> and back <u>pain</u> and <u>chronic headaches</u>." *See* R. at 208 (emphasis added).

To the extent the ALJ concluded that these impairments, in and of themselves, did not impose restrictions beyond those he endorsed (a determination not supported by his written decision), his failure to account for them was significant. *Compare* <u>Newell v. Commissioner of Soc. Sec.</u>, 347 F.3d 541, 546 (3d Cir. 2003) (at "severity" stage, ALJ may discount only "slight abnormalities" having "no more than a minimal effect on [the Claimant's] ability to work") *with* discussion *supra*. This is so because the Commissioner is required to "consider the combined effect of all of [a claimant's] impairments, physical and mental, in determining whether [she] is entitled to disability benefits." <u>Plummer v. Apfel</u>, 186 F.3d 422, 435 (3d Cir. 1999) (citation omitted).[2]

---

[2] More generally, the ALJ's observations regarding the Claimant's physical impairments are quite dismissive, and at times quite wrong. His decision states, for example, that there was "no evidence of neck or back impairment." *See* ALJ's 2d Decision, R. at 291; *cf. also id.* (apparently rejecting neck/back impairment because "there appears to be no structural reason for her pain"). The breadth of contrary medical evidence is too great to recount. *See, e.g.*, R. at 125 (report of treating physician Dr. Atkinson stating that, despite "full range of motion," Claimant suffered "cervical and lumbar strain"); *id.* at 208 (non-examining physician's RFC report, finding x-rays "within normal limits" but confining Claimant to "[l]imited RFC secondary to neck and back pain and chronic headaches"). The ALJ also penalized

Nor can the ALJ's decision withstand scrutiny at stage three of the sequential analysis.  Despite being instructed by the Appeals Council to demonstrate compliance with the "special technique described in 20 CFR 404.1520(a) and 416.920(a)," summarized in the Administration's PRT Form, no such analysis can be found in the ALJ's decision.

As noted above, the ALJ determined that Ms. Gessler suffered the "severe" impairments of "depression, anxiety and bipolar disorder."  *See* discussion *supra*.  Non-examining SSA physician Douglas Schiller confirmed these diagnoses, finding the Claimant's conditions satisfied Part "A" for Listings 12.04 (Affective Disorders), and 12.06 (Anxiety-Related Disorders).  *See* R. at 222, 225, 227.  Under these listings, a claimant's impairments are disabling if two of the four Part "B" criteria are satisfied, namely:  (1) "marked" restriction of activities of

---

the Claimant for failing to seek additional treatment for her impairments, despite uncontroverted indications in the record regarding her inability to pay.  *Compare* ALJ's 2d Decision, R. at 291 (finding Claimant's headaches non-severe because she "receive[d] no ongoing treatment" and questioning her limited treatment for neck and back pain) *with, e.g.,* R. at 126-27 ("we will proceed with physical therapy and an MRI of the cervical and lumbar spine," but Claimant "needs to wait on these because she has no insurance and cannot afford them at this time") *and id.* at 146-47 (hospital records, revealing Claimant presented to emergency room for migraine headache as "private pay" patient; she "was on prop[r]anolol" for headaches "but stopped because [she had] no insurance"); *see also generally* Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("an adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, . . . including inability to pay") (citations and internal quotations omitted).

daily living; (2) "marked" difficulties in maintaining social
functioning; (3) "marked" difficulties in maintaining
concentration, persistence or pace; or (4) repeated episodes of
decompensation, each of extended duration. *See generally* <u>Meyler</u>
<u>v. Commissioner of Soc. Sec.</u>, 2007 WL 2421810, *4 (3d Cir.
Aug. 28, 2007) (citing applicable regulations).

To be sure, the non-examining physician ultimately concluded
that Ms. Gessler met none of these criteria. *See* R. at 232
(finding "moderate" limitations in daily living, social
functioning, and maintaining concentration, persistence or pace,
and "insufficient evidence" regarding episodes of
decompensation). Nowhere in his decision, however, did the ALJ
discuss the Part B criteria, let alone identify and rely upon the
non-examining physician's report to conclude they were absent.
*See generally* R. at 288-95.

Even had the ALJ relied on the non-examining physician's
report, the court seriously doubts that his findings would have
enjoyed the support of substantial evidence. Indeed,
consultative examiner Dr. Uran found that the Claimant's capacity
for making social adjustments essentially was "[p]oor[ to n]one."
*Compare* discussion *supra* (noting Part B criterion regarding
"[m]arked" difficulties in maintaining social functioning) *with*
R. at 215 (Dr. Uran's report, finding inability to "mak[e]
personal-social adjustments"). Dr. Uran's other findings call

-7-

into question Ms. Gessler's ability to maintain concentration, persistence and pace and perform activities of daily living. *Compare id.* at 214 (Claimant's ability to "[m]aintain [a]ttention/[c]oncentration" was only "fair") *with, e.g.,* Notobartolo v. Astrue, 2007 WL 4443245, *4 (E.D. Pa. Dec. 18, 2007) (SSA forms commonly define "fair" as "seriously limited . . . but not precluded," and courts "have reached differing conclusions as to whether" this assessment meets the "marked" requirements in Part B) (citations omitted, some quotations in original);[3] *see also, e.g.*, R. at 212, 214 (Dr. Uran found Claimant had "[p]oor[ to n]o" ability to carry out complex or detailed job instructions, her "train of thought [was] interrupted on occasion," she "often forgets the location of placement of objects," and her "[i]mmediate memory is poor"); *id.* at 216-17 (noting restrictions regarding, or that other people perform, nearly every major activity of Claimant's daily living).

In sum, the ALJ did not heed the Appeals Council's directive regarding the special technique described in 20 CFR 404.1520(a) and 416.920(a), and his analysis at step three otherwise is not

---

[3] To further complicate matters, the "fair [ability]" category endorsed by Dr. Uran is not defined in the record. *Compare* R. at 214-15 (Dr. Uran provided only pages "6 of 7" and "7 of 7" of form, neither of which defined "fair") *with* Foley v. Barnhart, 432 F. Supp.2d 465, 480 (M.D. Pa. 2005) (requiring ALJ, under similar circumstances, "to clarify [on remand] the source of the form used and the meaning of the term 'fair'").

supported by substantial evidence.[4]

The ALJ also failed to account for the Council's concerns regarding Dr. Uran's report. *See* discussion *supra* (noting Dr. Uran's findings that Ms. Gessler "experienced difficulty in recall of recent events," "she had poor immediate memory," and "ratings of fair to poor in [nearly] all work-related areas"). The Council found that the record then before the ALJ required "further development" to determine "the restrictions imposed by the [C]laimant's mental impairments on her ability to perform work-related activities." *Id.*; *see also id.* (ALJ was instructed to gather additional evidence regarding Claimant's mental impairments, including "if warranted," another consultative examination and medical source statements regarding RFC).

---

[4] On remand, the ALJ is cautioned that an improper reliance on the non-examining physician's Part B evaluation again will result in a reversal. *See, e.g.*, Fromal v. Shalala, 1993 WL 516398, *4 (E.D. Pa. Dec. 10, 1993) (where SSA staff physician "neither examine[s the] plaintiff nor file[s] detailed written reports," but instead "merely review[s her] medical file and check[s] off boxes" on RFC form, opinion does not constitute substantial evidence) (citations omitted, emphasis added); Green v. Schweiker, 749 F.2d 1066, 1071 n.3 (3d Cir. 1984) ("[s]tanding alone, . . . [a] capacities evaluation form," in which "government physicians . . . [merely] check[] off . . . boxes," is "not substantial evidence"); Plummer, 186 F.3d at 429 (although "[a]n ALJ may choose to give greater weight to the opinion[s] of a consulting examiner or non-examining physician when [they are] more consistent with the evidence of record," when "a conflict in the evidence exists" he "must consider all the evidence and give some reason for discounting the evidence [he] rejects") (citations omitted). And though the ALJ has offered reasons for rejecting the far more detailed report of Dr. Uran, those reasons are insufficient. *See* discussion immediately *infra*.

If the record was so further developed, it is unapparent from the written decision. Instead, the ALJ merely attacked Dr. Uran's prior report, stating:

> The undersigned finds little evidence . . .
> supporting Dr. Uran's assessment. While the
> [C]laimant had difficulty performing
> calculations at times during the examination,
> it is not clear that her ability to
> concentrate was impaired. . . . There is
> nothing in the objective evidence showing
> [she] is unable to concentrate or has
> impaired memory.

ALJ's 2d Decision, R. at 291.

These findings are facially inconsistent with the direct, specific observations of Dr. Uran. *See* R. at 212 (during examination, Claimant "had difficulty for the recall of recent events," her "train of thought [was] interrupted on occasion," and her "immediate memory [was] poor"). The ALJ has no basis for claiming better knowledge or understanding of Ms. Gessler's condition(s), and his observations smack of impermissible lay opinion. *See generally* <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 874 (3d Cir. 1983) ("an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence") (citations and internal quotations omitted).

Next is the ALJ's unfavorable credibility determination. Among other things, he relied on:

- the Claimant's minimal work history;

- her having "very little contact with the mental health system" prior to September 2002;

- certain records indicating she "does very well on her medication";

- the lack of objective medical findings regarding her neck and back pain;

- her ability to sit through the entire hearing; and

- her once testing positive for marijuana use despite denying the same.

*See* ALJ's 2d Decision, R. at 291.

In the court's view, these observations present a rather myopic view of the record, with the ALJ holding any perceived doubt, reasonable or otherwise, against the Claimant.

As to work history, the record reveals that Ms. Gessler was born in 1980 and turned eighteen in 1998. *See* R. at 87. From then until her alleged disability onset in August 2001, she maintained nearly continuous employment. *Id.* at 101 (revealing full or part-time employment from June 1998 to July 1998, and from November 1998 until May 2001). If the Claimant is to be faulted for a "minimal work history," the most obvious culprit is her relative youth.

As for her "little contact with the mental health system" prior to September 2002, the ALJ's observation fails to account for her undisputed financial difficulties and prior references to

diagnosis and treatment.  *See, e.g.*, R. at 126-27 (Dr. Atkinson's report of August 23, 2001, *i.e.*, five days before the Claimant's purported disability onset date, stating she had been "diagnosed with depression, social anxiety disorder and panic disorder by Dr. Patel" and was undergoing treatment).

Regarding her favorable response to medication, there are reports of treating physician Dr. Oloufa between January and May 2005 indicating the same.  *See, e.g.*, R. at 378, 381, 384, 386. His other reports in May 2004 and March 2005, however, are not so cheery.  *See* R. at 393 (May 24, 2004 report, indicating "several panic attacks daily"); *id.* at 385 (March 14, 2005 report, finding Claimant "dishevel[]ed [and] disorganized").  As the ALJ otherwise would hasten to add, moreover, none of Dr. Oloufa's reports are accompanied by detailed, legible findings.  *Compare* Reports cited immediately *supra with* ALJ's 2d Decision, R. at 291 (rejecting Dr. Jurenovich's opinion dated July 7, 2005, submitted before ALJ's decision, indicating Claimant was restricted to "less than sedentary work"; "there is absolutely no supporting evidence for this opinion").

Turning to the lack of objective medical findings regarding her neck and back, the purported absence of positive MRI or x-ray results did not lead the medical professionals to discount Ms. Gessler's complaints.  *See* discussions *supra*; *see also* Schwartz v. Halter, 134 F. Supp.2d 640, 653 (E.D. Pa. 2001)

("[t]here is no requirement that there be objective evidence of pain," but only "some condition that could reasonably produce pain") (citations omitted). As referenced below, moreover, the Claimant has since produced test results consistent with her complaints. *See* discussion *infra* (directing ALJ to consider additional findings of Dr. Jurenovich as part of Sentence Four remand).

As for the Claimant's ability to sit through the administrative hearing, the ALJ's reliance on this observation runs afoul of "roundly condemned 'sit and squirm' method of deciding disability cases." *See* <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 874 (3d Cir. 1983) (citations omitted).

Last is the Plaintiff's having once tested positive for marijuana use, despite testifying she did not "abuse drugs." *See* 1st Hearing Tr., R. at 34-35 (upon ALJ's inquiry regarding positive drug test taken during hospital visit, Claimant denied "abuse" but admitted "recreational" use). As the ALJ himself recognized, Ms. Gessler's marijuana consumption has nothing to do with her disability claims. *See* ALJ's 2d Decision, R. at 291. Her failure to volunteer this information at the hearing appears understandable, and her testimony that she did not "abuse" drugs or alcohol is consistent. Under the circumstances, the ALJ erred to the extent he placed more than minimal reliance on this issue in making his credibility determination.

Then there is the ALJ's RFC determination.  *See* ALJ's 2d
Decision, R. at 292 (Claimant could perform limited range of
light or sedentary work requiring only "simple, repetitive work
that does not involve more than routine . . . processes and
settings, incidental interaction with the public[ or] high
stress; no high quotas or close attention to quality production
standards, team work or repeated bending at the waist to 90
degrees").  The ALJ offers no explanation regarding how he came
to endorse these detailed restrictions and, if medical evidence
in the record supports them, they are not identified.  *See id.*;
*compare also id.* (only exertional limitation was "[no] repeated
bending at the waist to 90 degrees") *with* R. at 202 (non-
examining physician's physical capacities form, opining Claimant
could only "[o]ccasionally" <u>climb</u>, <u>balance</u>, <u>stoop</u>, <u>kneel</u>, <u>crouch</u>
or <u>crawl</u>).

Because "a claimant's [RFC] is a medical question," an ALJ
must "consider at least some supporting evidence from a [medical]
professional" in rendering his decision.  <u>Lauer v. Apfel</u>,
245 F.3d 700, 704 (8th Cir. 2001) (citations and internal
quotations omitted); *accord* <u>Frankl v. Shalala</u>, 47 F.3d 935, 938
(8th Cir. 1995) ("Absent <u>some</u> medical evidence of [the
claimant's] RFC at the time of the hearing, the Secretary could
not meet [his] burden [of] . . . demonstrat[ing] that [the
claimant] was capable of performing the full range of light

work.") (emphasis in original).  And while the ALJ did address evidence of the Claimant's mental impairments and the limitations they presented, this court is unable to trace the path of his reasoning.  *See* Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996) (an ALJ is required to "sufficiently articulate his assessment of the evidence" so that the court may "trace the path of [his] reasoning") (citations and internal quotations omitted); Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (same); *see also* Yensick v. Barnhart, 2007 WL 2326841, *4 (3d Cir. Aug. 16, 2007) ("[t]he ALJ must weigh the credibility of the medical and non-medical evidence . . . to determine a claimant's RFC," and "[t]he ALJ's explanation of his conclusion must be as comprehensive and as analytical as possible and should include a statement of the facts in support" thereof) (citations to published authority omitted).

A final issue is Claimant counsel's submission of medical records authored by Dr. Jurenovich but excluded from the record before the ALJ.  *See* Pl.'s Br. (Doc. 12) at 7.  Counsel notes that her enclosure letter to the ALJ, submitted before his decision, referenced the materials.  *See id.*  She does not affirmatively swear to having submitted the records, however, nor does she charge the Administration with misplacing them. *See id.*

"When [a] claimant seeks to rely on evidence that was not before the ALJ," it is within the district court's discretion to "remand [the case] to the Commissioner" for consideration of such evidence, but only if "there was good cause why it was not previously presented to the ALJ (Sentence Six review)." Matthews v. Apfel, 239 F.3d 589, 593 (citations omitted). Here, the Administration has sworn that the record before the court "constitute[s] a full and accurate transcript of the entire . . . proceedings [in] this case." *See* Certification filed under Doc. 6. Unsworn suppositions are no match for the SSA's Certification, and there is no good cause for a Sentence Six remand.

Nevertheless, the ALJ is instructed to consider the additional evidence in conducting his Sentence Four remand. As noted above, the Claimant's entitlement to SSI benefits does not require her to demonstrate disability before a date last insured, and Dr. Jurenovich's reports are just as competent as any other additional evidence to be gathered. *See* discussion *infra*. For the purposes of DIB, moreover, Dr. Jurenovich (and/or other medical providers) should be invited to provide "retroactive inference" evidence regarding disability onset date, and the record may even require it. *See* Walton v. Halter, 243 F.3d 703, 708-710 (3d Cir. 2001) (acknowledging "difficult[y]" that "slowly progressive impairments" may present

in "[d]etermining the proper onset date" and holding that, "if the medical evidence is ambiguous and a retroactive inference is necessary," ALJ must "call upon the services of a medical advisor to insure that the [onset] determination" has "a legitimate medical basis") (citations, internal quotations and alterations omitted).

In conclusion, the court has serious concerns regarding the approach taken by the ALJ in this case. As the Third Circuit Court has long recognized:

> Although the burden is upon the claimant to prove [her] disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in [the] administrative proceeding than is applicable in . . . . an adversar[ial] proceeding. The applicant is confronted with no adversary in the usual sense of that term. The Social Security Administration [is expected to] provide[] an applicant with assistance to prove [her] claim.
>
> We do not say that an administrative law judge must search out all the relevant evidence [that] might be available, . . . . [b]ut these proceedings are extremely important to the claimants, who [may be] in real need . . . and who [request] not charity but that which is rightfully due . . . [under] the Social Security Act.

Hess v. Secretary of Health, Educ. & Welfare, 497 F.2d 837, 840 (3d Cir. 1974) (citation and internal quotations omitted).

These observations notwithstanding, the court is constrained to again remand this case for further administrative proceedings.

*See* Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000)

("[o]rdinarily, when a claimant appeals [a] denial of benefits

and we find that such a denial was improper, we, out of . . .

abundant deference to the [Commissioner,] remand the case for

further administrative proceedings"; "[c]onsistent with this

rule, . . . an immediate finding of disability" should be entered

"only if the record overwhelmingly supports such a finding")

(citations and internal quotations omitted).

The Defendant is cautioned, though, that "administrative

deference does not entitle the Commissioner to endless

opportunities to get it right." Seavey v. Barnhart, 276 F.3d 1,

13 (1st Cir. 2001) (citation omitted); *see also id.* (interpreting

Third Circuit Court's decision in Morales v. Apfel, 225 F.3d 310

(3d Cir. 2000) as "exercis[ing] what [may be] view[ed] as a form

of equitable power to order benefits in cases where the

entitlement is not totally clear, but the delay involved in

repeated remands has become unconscionable").

The Claimant's applications for benefits were filed nearly

six years ago.  When the ALJ's initial denial of benefits was

appealed in 2004, the Administration sought and was granted a

voluntary remand.  On remand, the ALJ failed to comply with the

Appeals Council's explicit instructions for remedying his

adjudicative deficiencies.  Now, the case again must be remanded

for further administrative proceedings, which will take months,

if not years, to complete.

This court has no intention of providing another "bite at the apple."  As it currently stands, the record approaches the sufficiency standards, cited above, justifying an immediate award of benefits.  Accordingly, the SSA should revisit Ms. Gessler's claims will all due expedience and ensure that its ultimate decision enjoys full support at each stage of the sequential analysis.

## INSTRUCTIONS ON REMAND

In addition to the instructions above, the ALJ shall adhere to the following.  On remand, the disability determination will begin at step two and address the severity of the Claimant's headache and cervical spine/neck impairments.

At this and every subsequent stage, "the [Administration] has the duty to develop the record fully and fairly, even [though] . . . the [C]laimant is represented by counsel."  *See* Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir. 1992) (citations and internal quotations omitted); *see also* Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) ("ALJs have a duty to develop a full and fair record in social security cases" and "must secure relevant information regarding a claimant's entitlement to social security benefits") (citations omitted, emphasis added).  The ALJ "may fulfill [his] duty [to develop the record] by ordering a consultative examination" or examinations.

-19-

*See* <u>Boyd</u>, 960 F.2d at 736; *see also id.* ("[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision") (citations and internal quotations omitted).  The ALJ also may request that examining physicians provide interpretations, explanations, or clarifications regarding the existing medical records.  *Cf., e.g.*, <u>Woodrow v. Secretary of Health & Human Servs.</u>, 1990 WL 66500, *3 (N.D.N.Y. May 10, 1990) ("if [a] treating source provides an incomplete report or an opinion that is inconsistent with other evidence," ALJ may request "the necessary additional evidence and interpretation or explanation from the treating source to resolve the inconsistency with other evidence in the record").

In addition, the Claimant should be afforded a reasonable opportunity to supplement the medical evidence consistent with the discussions above.  *See* <u>Gachette v. Weinberger</u>, 551 F.2d 39, 40-41 (3d Cir. 1977) (counsel "should be permitted to make an offer of proof regarding what a more fully developed record might have shown"); *see also* <u>Stover v. Shalala</u>, 1995 WL 327981, *8 (E.D. Pa. May 31, 1995) (on remand, claimant was to "be given an opportunity at th[e] rehearing to submit additional relevant evidence").

Once any additional evidence has been provided, the ALJ shall conduct an another hearing if either requested by the

Claimant or independently deemed necessary. Thereafter, the ALJ shall either, (a) award benefits as appropriate, or (b) issue a written decision accounting for every shortcoming identified in this Opinion and otherwise demonstrating that substantial evidence supports each stage of his five-step sequential analysis.

For all of the reasons stated above, the court hereby enters the following:

## II.  ORDER

The Plaintiff's Motion for Summary Judgment (**Doc. 11**) is **GRANTED,** the Defendant's Motion for Summary Judgment (**Doc. 13**) is **DENIED,** and this case **REMANDED FORTHWITH** under Sentence Four of 42 U.S.C. § 405(g) for further administrative proceedings as consistent with the above Opinion.

IT IS SO ORDERED.


February 26, 2008

Francis X. Caiazza
U.S. Magistrate Judge

cc (via email):

Terry K. Wheeler, Esq.
Lee Karl, Esq.